1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TENNILLE S.,                              Case No. 21-cv-09779-SI

8                    Plaintiff,

9           v.                                 ORDER RE: CROSS-MOTIONS FOR
                                               SUMMARY JUDGMENT
10   KILOLO KIJAKAZI,

11                   Defendant.                RE: DKT. NOS. 12, 15

12

13          Plaintiff Tennille S. seeks Social Security benefits under Titles II and XVI.[1]  Pursuant to 42

14   U.S.C. § 405(g), plaintiff filed this lawsuit for judicial review of the final decision by the

15   Commissioner of Social Security ("Commissioner") denying her benefits claim.  Having considered

16   the parties' papers and the administrative record, and for the reasons set forth below, the Court

17   GRANTS plaintiff's motion for summary judgment (Dkt. No. 12), DENIES defendant's cross-

18   motion for summary judgment (Dkt. No. 15), and REMANDS this action for immediate payment

19   of benefits, pursuant to sentence four of 42 U.S.C. § 405(g).

20

21                                      **BACKGROUND**

22          On August 17, 2016, plaintiff protectively filed an application for Disability Insurance

23   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

24   Security Act.  Administrative Record ("AR") 281, 283.  Plaintiff alleged an onset date of January

25   15, 2008.  Her applications were denied originally and upon reconsideration.  AR 124-25, 149-50,

26

27          [1] The Court partially redacts plaintiff's name to mitigate privacy concerns, as suggested by
     the Committee on Court Administration and Case Management of the Judicial Conference of the
28   United States. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

United States District Court
Northern District of California

171-72, 195-96.  Following a July 24, 2018 hearing before ALJ David LaBarre, plaintiff received an unfavorable decision on December 26, 2018.  AR 16-29.  After the Appeals Council denied plaintiff's review request, plaintiff filed for judicial review.  *See Tennille S. v. Saul*, No. 20-cv-2447-EJD (N.D. Cal. Apr. 2, 2020).   The parties stipulated to a voluntary remand, and the Appeals Council instructed that the ALJ re-evaluate the vocational evidence and render a new decision for the period prior to April 15, 2020.[2]  *See id.*, Dkt. No. 22; AR 2628-29.

The new hearing took place on October 19, 2021.  AR 2549.  On November 15, 2021, the ALJ rendered an unfavorable decision.[3]  AR 2546.  The ALJ found plaintiff was under a disability but that "a substance use disorder is a contributing factor material to the determination of disability"; thus, the ALJ found plaintiff was not disabled under the Social Security Act from the alleged onset date through the date of decision.  AR 2550, 2562.

The ALJ found plaintiff had the following severe impairments: anemia, systemic lupus erythematosus, degenerative disc disease of the lumbar spine, post-traumatic stress disorder, schizophrenia, bipolar disorder, anxiety, major depressive disorder, and methamphetamine use disorder.  AR 2552.  The ALJ further found that, including plaintiff's substance use, the severity of plaintiff's impairments met the criteria of Listing 12.03 (schizophrenia spectrum and other psychotic disorders).[4]  *Id.*;  https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_03.  However, the ALJ found that if plaintiff stopped substance use, plaintiff would not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  AR 2553-55.  The ALJ then determined that plaintiff had the residual functional

---

[2] Plaintiff filed a new application for Title XVI disability benefits on April 15, 2020, and the agency found her disabled.  *See* AR 2629.  Plaintiff states that she now receives ongoing SSI benefits.  Pl.'s Mot. at 4-5.

[3] Plaintiff's motion erroneously refers to the ALJ decision as dated December 29, 2021.  *See* Dkt. No. 12 ("Pl.'s Mot.") at 4.

[4] The ALJ also found that plaintiff would meet Listings 12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); and 12.15 (trauma and stressor-related disorders).  AR 2553 n.1.  For the sake of brevity, the ALJ did not analyze those listings.  *Id.*

capacity ("RFC") to perform medium work with numerous limitations.[5]  AR 2555.  In light of that RFC finding, the ALJ concluded that jobs existed in significant numbers in the national economy that plaintiff can perform, and that plaintiff would not be disabled if she stopped the substance use.  AR 2561-62.

Following the ALJ's decision, plaintiff did not file Appeals Council exceptions.  Dkt. No. 20 at 1.  Therefore, the ALJ's unfavorable decision rendered November 15, 2021, became the final decision of the Commissioner after the 61st day.  *Id.* at 2 (citing 20 C.F.R. §§ 404.984(d), 416.1584(d)).  Plaintiff now seeks review in this Court.  Dkt. No. 1.


## LEGAL STANDARDS

### I.      Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner.  42 U.S.C. § 405(g).  This Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla

----

[5] Specifically, the ALJ adopted the following RFC:

. . . if the claimant stopped the substance use, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant may frequently climb ramps or stairs, but never ladders, ropes, or scaffolds.  The claimant may frequently balance, stoop, kneel, crouch, or crawl. The claimant can understand, remember, and carry out simple, routine, repetitive tasks.  The claimant may have only brief, superficial interaction with the general public, and only occasional interaction with coworkers that does not involve working on teams or in tandem with coworkers.  The claimant can have occasional changes to the routine work setting and workplace.  The claimant would be off-task ten percent of the workday and would be absent once per month.

AR 2555.

United States District Court
Northern District of California

but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

## II.       The Five-Step Disability Inquiry

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098. The five steps of

the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe?  If so, proceed to step three. If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(1).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work.  *Id.* §§ 404.1545(a)(4), 416.945(e).  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.*  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms.  *Id.*  When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective

5

medical evidence, and statements about how the claimant's symptoms affect him or her.  *Id.*  The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements.  *Id.* §§ 404.1529(c)(2), 416.929(c)(2).  The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms.  *Id.* § 416.929(c)(3)(i)-(vii).  After determining the RFC, the ALJ proceeds to step four and five of the disability inquiry.

### III.    Drug Addiction and Alcoholism

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled.  20 C.F.R. §§ 404.1535, 416.935.  The Social Security Act provides that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol.  *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).  The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling."  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor to the determination of disability, and the claimant is disabled, independent of his or her DAA.  *See id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  The claimant bears the burden of proving that his substance use is not a material contributing factor to his disability.  *Parra*, 481 F.3d at 745.

The Ninth Circuit has ruled that when a claimant has a history of drug or alcohol use, the

ALJ must first determine the severity of the claimant's symptoms without attempting to filter out which impairments are related to the claimant's drug or alcohol use. *Bustamante*, 262 F.3d at 955. If the ALJ determines that the claimant's impairments, including the impairments related to drug or alcohol use, are severe enough to be disabling, then the ALJ proceeds in assessing the materiality of the claimant's DAA, i.e. whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *Id*. (interpreting 20 C.F.R. §§ 404.1535, 416.935); *see also* SSR 13-2p, 78 Fed. Reg. 11939, 11941 (Feb. 20, 2013).[6]

## DISCUSSION

## I.       The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff contends that the ALJ erred in giving reduced weight to the opinions of her treating physicians, Dr. Jurkowski and Dr. Bird, and that the reasons the ALJ gave were not supported by substantial evidence. According to Dr. Jurkowski, plaintiff "suffers from at least 3 serious disorders[:] . . . Schizoaffective disorder, which first manifested at age 16, when she began hearing critical voices and seeing shadows"[;] chronic PTSD, after plaintiff "was physically and emotionally abused as a child, and sexually assaulted at age 7 and age 14"[;] and methamphetamine abuse, which started in 2014. AR 1735. Dr. Jurkowski and Dr. Bird opined that, even if the substance abuse were to end, plaintiff's severe behavioral health symptoms would continue. AR 1745, 2506.

### A.       Legal Standard

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *superseded on*

---

[6] Social Security Rulings in the Federal Register are published by the Commissioner of Social Security and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

United States District Court
Northern District of California

*other grounds by regulation*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416), *as recognized in Woods v. Kijakazi*, 32 F.4th 785, 789-90 (9th Cir. 2022).

For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  As such, for these claims, the ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician.  *Lester*, 81 F.3d at 830.  Even where an examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *but see Woods*, 32 F.4th at 790 ("the 'specific and legitimate' standard is clearly irreconcilable with the 2017 regulations").  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

### B.       Summary of Medical Opinions

On December 4, 2016, Dr. Paul Jurkowski, M.D., of Bay Area Community Services, completed a mental impairment questionnaire and submitted an accompanying letter.  AR 1735-45. Dr. Jurkowski, who had been treating plaintiff weekly for about one month (since November 7, 2016), diagnosed plaintiff with schizoaffective disorder, onset in 1992; amphetamine dependence, onset in 2014; and post-traumatic stress disorder ("PTSD"), onset in 1983.  AR 1740.  Dr. Jurkowski found that plaintiff had "marked" to "extreme" limitations in the area of sustained concentration and persistence, with the exception of only "moderate" limitation in the ability to make simple work-related decisions.  AR 1743.  Dr. Jurkowski explained that plaintiff's "fearfulness of others results in an inability to relate to others, and at times combativeness and assaultiveness." *Id.*  For the same

8

reasons, he found plaintiff had "extreme" limitations in her social interactions, with the exception of a "mild" limitation in the ability to ask simple questions or request assistance.  *Id.*  Dr. Jurkowski stated that plaintiff would be absent from work 5 or more days per month and would be off-task more than 30% of the time.  AR 1745.  He reported that plaintiff had last used drugs about one week prior to the report.  *Id.*  He opined that plaintiff's mental impairments would still be disabling if she were not using drugs or alcohol, explaining, "The onset and worsening of her schizoaffective disorder predated her drug use.  (Onset age 17; amphetamine use started age 38.)"  *Id.*  Dr. Jurkowski attached a letter explaining which medical records he reviewed and summarizing plaintiff's history.  AR 1735-36.  He summed up: "her disability is total, chronic, and severe, and her prognosis is very poor."  AR 1736.

On January 25, 2017, plaintiff saw Dr. David Pingitore, Ph.D., for a consultative examination.  Plaintiff reported that she had used a small amount of meth three days prior to the exam.  AR 1764.  Dr. Pingitore diagnosed plaintiff with: Adjustment Disorder with Depressed Mood; Schizoaffective Disorder; Methamphetamine Abuse, in Self-Reported Partial Remission; rule/out Post Traumatic Stress Disorder early onset.  AR 1765.  Dr. Pingitore did not reach a firm conclusion about plaintiff's disability, stating, "Based on today's mental status exam, results obtained self-reported history, and behavior and attitude during this examination there is some but by no means conclusive objective medical evidence that the claimant is unable to engage in substantial employment by reasons of mental disorder."  AR 1766.  Dr. Pingitore suggested that "[i]t may be helpful to obtain additional medical records regarding this claimant's treatment at Bay Area Community Services beginning in 2016."  *Id.*  Dr. Pingitore did not opine on the materiality of plaintiff's DAA.

In June 2017, Dr. Tim Schumacher, Ph.D., reviewed plaintiff's file at the reconsideration level of her disability claim.  The file included Dr. Pingitore's examination and other records submitted at the initial level of plaintiff's disability claim, as well as new medical records from 2017.  *See* AR 175-77.  It is unclear whether Dr. Schumacher had the treatment records that Dr. Pingitore had recommended obtaining; he did not have the assessment that Dr. Jurkowski completed

in December 2016.  *See* AR 175-84, 192 ("There is no indication that there is a medical opinion from any medical source.").

Dr. Schumacher did not find plaintiff met the criteria in the Listing of Impairments.  AR 189.  Dr. Schumacher found plaintiff was not disabled, explaining,

> Clr reports worsening of depression and anxiety on recon application.  New MER from outpt contacts shows clt functions and behaves essentially similar to that assessed at the initial level and worsening of her mental condition is not supported by this evidence.  When not abusing substances he [sic] remains able to perform routine work as reflected in initial PRTF [sic] and MRFC.  The initial decision remains accurate and is adopted for the recon application.

AR 187.

On June 29, 2018, Dr. Aislinn Bird, M.D., completed a mental impairment questionnaire.  Dr. Bird was plaintiff's treating physician at TRUST Lifelong since May 2017, seeing plaintiff every 1-6 months.  AR 2503.  Dr. Bird diagnosed plaintiff with Major Depressive Disorder, recurrent, severe, with psychotic features; Delusional Parasitosis; PTSD, chronic; and Methamphetamine Use Disorder.  *Id.*  Dr. Bird opined that plaintiff had marked to extreme limitations in the ability to: understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself.  AR 2505-06.

In support of this opinion, Dr. Bird summarized plaintiff's history as follows:

> Patient was first exposed to trauma as a young child, with resultant severe PTSD symptoms.  She avoids people and crowds, which impair her ability to take public transportation, and wait in line for services.  She has frequent nightmares, which impacts her sleep, and flashbacks, which are very distressing.  She also has severe MDD, with psychotic features (auditory hallucinations), which worsen at night, and also interferes with sleep.  Roughly eight months ago, she developed Delusional Parasitosis, while living at her current transitional housing facility.  She believes that her room, and her body are infested with insects, and will often demand to be tested for parasites (results have been negative) or bring in samples that she believes are parasites, although are not (often lent [sic] or pieces of fiber).  This strong, inflexible belief is not only distressing, but time consuming (she would spend hours every day cleaning her room and trying to remove the bugs from her carpet) and spends large amounts of money on cleaning supplies and "remedies" to remove the insects.  She is not causing harm to her body to remove the believed parasites, although this is a known risk.

AR 2506.

Dr. Bird stated that plaintiff's other impairments would not be expected to significantly improve in the absence of substance use, explaining, "Patient's severe behavioral health conditions

United States District Court
Northern District of California

occurred prior to any substance use.  I do not expect her symptoms to significantly improve with abstinence, and there is a possibility that delusional parasitosis would improve with long-term absence of meth use."  *Id.*  Dr. Bird opined that plaintiff would be absent from work four or more days per month and would be off-task more than 30% of the time.  AR 2506-07.

### C.     Analysis

In determining plaintiff's RFC, the ALJ accorded "great weight" to the opinions of State agency medical consultants Dr. Schumacher and Dr. H. Samplay, M.D.[7]  AR 2559.  The ALJ discussed but did not assign a specific weight to the opinion of State agency psychological examiner Dr. Pingitore.  *Id.*  The ALJ assigned "partial weight" to the opinions of plaintiff's treating physicians, Dr. Jurkowski and Dr. Bird.  AR 2560-61.

Plaintiff argues that the ALJ erred in discounting the opinions of treating physicians Dr. Jurkowski and Dr. Bird.  The Court agrees.  Substantial evidence does not support the weight that the ALJ accorded to the medical opinions.  The ALJ's analysis contains factual inaccuracies and is internally inconsistent.  Such error was not harmless.[8]

#### 1.     Dr. Jurkowski

The ALJ weighed Dr. Jurkowski's opinion as follows:

The claimant submitted the mental RFC assessments of examiner Paul Jurkowski, M.D., and treating physician Dr. Aislinn Bird, who [sic] opinions the undersigned accords partial weight (Exhibits 24F and 47F).

. . .

The undersigned finds Dr. Jurkowski's conclusion that the claimant's drug use was not the primary source of her disability unpersuasive.  As previously noted, Dr. Jurkowski examined the claimant only once and reviewed limited mental health records at the time.  He appeared to have relied primarily on the claimant's subjective complaints in reaching his conclusion that her drug use was not the "primary source

---

[7] Dr. Samplay rendered an opinion on plaintiff's physical RFC at the reconsideration level in May 2017.

[8] The Court also agrees with plaintiff's position that although the ALJ nominally assigned the treating physicians "partial weight," his decision was in reality a rejection of all their relevant conclusions regarding RFC, DAA materiality, and disability.

of her disability."  The claimant worked as a nurse practitioner prior to 2008, as she testified, at a time when she claimed to have experienced mental symptoms.  However, it was not until 2014 when she started abusing methamphetamine.  If the undersigned were to believe this narrative, it is reasonable to conclude that the methamphetamine abuse is a contributing factor material to her disability.  In other words, prior to 2008, at the time when she admittedly was not on methamphetamine, she was able to work for an extended period of time notwithstanding her mental health symptoms.  It was not until after 2014 when she abusing [sic] methamphetamine when she could no longer work and began to experience significant mental deterioration.  Therefore, the substance abuse likely is the primary if not sole cause for her inability to continue working, even if she continued to experience some mental health symptoms.

AR 2560.

At the outset, the Court notes a critical factual inaccuracy in the ALJ's analysis.  As defendant concedes, the ALJ erred in characterizing Dr. Jurkowski as an "examiner" who had seen plaintiff only one time.  The parties agree that Dr. Jurkowski was a treating doctor who met with plaintiff three times prior to authoring the medical source statement.  *See* Pl.'s Mot. at 14; Def.'s Cross-Mot. at 9 (citing AR 1994-99).  As such, Dr. Jurkowski's opinion was entitled to deference.  *See Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633).[9]

The ALJ also discounted Dr. Jurkowski's opinion because "[h]e appeared to have relied primarily on the claimant's subjective complaints in reaching his conclusion that her drug use was not the 'primary source of her disability.'"  The Court cannot be sure whether the ALJ would have made the same finding had the ALJ properly understood that Dr. Jurkowski was a treating rather than examining physician.  In any event, this reason is not supported by substantial evidence, as Dr. Jurkowski's report show that he reviewed other medical records, including her medical file and laboratory results, and that he conducted his own mental status examinations at plaintiff's appointments.  *See* AR 1723-28, 1735, 1740.  Additionally, the Ninth Circuit has found this to be an insufficient reason to reject a treating doctor's opinion, particularly in cases involving mental impairments.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (explaining that a clinical interview and a mental status evaluation "are objective measures and cannot be discounted as a 'self-

---

[9] The ALJ also erroneously stated that plaintiff "worked as a nurse practitioner prior to 2008[.]"  *See* AR 2560.  As plaintiff testified and as defendant does not dispute, plaintiff worked as a certified nursing assistant, having earned her certificate after high school.  AR 61-62, 2511.

report[,]'" and stating that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness").

Finally, the ALJ appears to have discounted Dr. Jurkowski's opinion based on the timeline of when plaintiff stopped working and when she began drug use. This portion of the decision is nothing short of inscrutable. It is undisputed that plaintiff stopped working in January 2008 and that she began using methamphetamine in 2014, when she became homeless. The ALJ appears to reason that plaintiff was able to work, but was not working, during the period from 2008 to 2014, but points to nothing in the record to support this premise. Alternatively, it seems that the ALJ simply ignored the period from 2008 to 2014, when plaintiff was not working but was not yet using drugs. As plaintiff notes, the Court relied on the opinion of non-examiner Dr. Schumacher in determining that plaintiff's DAA was material, but Dr. Schumacher did not review any records from the time period between the alleged disability onset date of January 15, 2008, and when the drug use began in 2014. *See* AR 174-84; Pl.'s Mot. at 22. In short, the Court can discern nothing from the ALJ's recitation of the timeline of events that would provide a specific and legitimate reason to reject the opinion of treating physician Dr. Jurkowski.

### 2.     Dr. Bird

The ALJ discounted Dr. Bird's opinion for "[s]ome of the same reasons" that he discounted Dr. Jurkowski's. AR 2560. The ALJ wrote,

> In addition, the undersigned finds unpersuasive [Dr. Bird's] conclusion that the claimant's other impairments would not be expected to significantly improve in the absence of substance use, effectively also concluding the claimant's substance use is a material [sic] to her disability. His opinion is conclusory in nature, with no explanation or basis for his conclusion. On the contrary, the undersigned finds it disingenuous that Dr. Bird could reach such a conclusion when at the time of treatment the claimant was still abusing methamphetamine.

AR 2560-61.

Because the opinion of treating physician Dr. Bird was contradicted by the opinion of consultant Dr. Schumacher, the ALJ needed to provide specific and legitimate reasons for rejecting Dr. Bird's opinion. The ALJ failed to do so.

Social Security regulations provide that, when a treating source's opinions are not given

13

controlling weight, an ALJ must analyze certain enumerated factors, including the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, "supportability," consistency, specialization, and other factors that tend to support or contradict the opinion. *Garrison*, 759 F.3d at 1012, n.11 (citing 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3)-(6) ("Evaluating opinion evidence for claims filed before March 27, 2017")).

Without discussing any of these factors, the ALJ gave "partial weight" to the opinion of Dr. Bird, while simultaneously giving "great weight" to the opinions of the non-examining State agency medical consultants. For claims filed before March 27, 2017, such as plaintiff's, an ALJ's failure to consider the factors outlined in the regulations "alone constitutes reversible legal error." *See Trevizo*, 871 F.3d at 676.[10] Moreover, it is wholly inaccurate to describe Dr. Bird's statement as lacking "explanation or basis for his conclusion," as the ALJ did. *See* AR 2560. Dr. Bird thoroughly completed the mental impairment questionnaire, providing explanations where required and chronicling plaintiff's lengthy medical history. *See* AR 2503-07.

Finally, it was not a specific and legitimate reason for the ALJ to reject Dr. Bird's opinion as "disingenuous . . . when at the time of treatment the claimant was still abusing methamphetamine." *See* AR 2561. This reason is both contrary to the legal standard and inconsistent with the ALJ's weighing of other medical opinions.

The ALJ appears to construe plaintiff's ongoing drug use as barring any physician from opining that DAA was not material. *See id.*; *see also* AR 2558 (ALJ stating, "the medical evidence of record fails to establish an extended period of sobriety upon which the undersigned *or any mental health professional* could rely to assess whether the claimant's substance abuse is a contributing factor material to the determination of her disability") (emphasis added). But Social Security Ruling 13-2p expressly states that "[t]here does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." SSR 13-2p, 78 Fed. Reg. at 11941. Thus,

---

[10] For claims filed on or after March 27, 2017, Social Security regulations no longer require the ALJ to explain the "relationship factors," though the ALJ is still required to explain how the agency "considered the supportability and consistency factors . . . ." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)(2)).

United States District Court
Northern District of California

1    the ALJ erred in rejecting Dr. Bird's opinion on the grounds that plaintiff was still using

2    methamphetamine at the time of Dr. Bird's report.

3        Finally, the Court notes that the ALJ assigned great weight to Dr. Schumacher's report, in

4    large part because the ALJ said it was "generally consistent" with Dr. Pingitore's report.  AR 2559.

5    Yet plaintiff reported using methamphetamines three days prior to Dr. Pingitore's exam.  AR 1764.

6    On the one hand, the ALJ rejected Dr. Bird's report because of plaintiff's meth use, while on the

7    other hand assigning great weight to Dr. Schumacher's report on the grounds that it was supported

8    by Dr. Pingitore's report, which was also conducted during a time when plaintiff was using meth.

9    In sum, the ALJ failed to provide any specific and legitimate reasons, supported by substantial

10   evidence in the record, for discounting the opinion of treating physician Dr. Bird.[11]

11

12   **II.      Plaintiff's Symptom Testimony**

13       Plaintiff also challenges the ALJ's rejection of her symptom testimony.

14

15       **A.      Legal Standard**

16       The Ninth Circuit has established a two-step analysis for determining how to credit a

17   claimant's symptom testimony:

18           First, the ALJ must determine whether the claimant has presented objective medical
             evidence of an underlying impairment which could reasonably be expected to
19           produce the pain or other symptoms alleged. . . .

20           If the claimant satisfies the first step of this analysis, and there is no evidence of
             malingering, the ALJ can reject the claimant's testimony about the severity of her
21           symptoms only by offering specific, clear and convincing reasons for doing so.  This
             is not an easy requirement to meet:  The clear and convincing standard is the most
22           demanding required in Social Security cases.

23   *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).  If the ALJ finds the claimant's

24   allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony

25

26

27   ───────────────────
         [11] Additionally, plaintiff testified at the July 24, 2018 hearing that she had been sober for
28   three months and one week.  AR 81.  If this is true, then plaintiff would have been more than two
     months sober at the time of Dr. Bird's June 29, 2018 report.

is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

## B.     ALJ's Findings

At the first step of the credibility test, the ALJ found that plaintiff's medically determinable impairments — with or without the substance use — could reasonably be expected to produce the alleged symptoms.  AR 2556.  The ALJ cited no evidence of malingering.  Moving to the second step, the ALJ found that — with or without the substance use — plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id.*

The ALJ summarized plaintiff's hearing testimony as follows:

> The claimant asserts disability on the basis of the severe impairments adopted above (Exhibits 4E, 5E and 14E; testimony).  The claimant testified she last worked as a nurse assistance [sic] in 2008 but left the job because she could not handle it mentally.  She had mental breakdowns and had fear of being alone with people in a dark room.  Since that time, she has difficulty remembering things and focusing.  She has difficulty getting along with people and co-workers in the past.  She isolates herself and has crying spells and mood swings.  She hears voices daily telling her they are coming to get her.  She also sees shadows and has had hallucinations all her life.  She typically stays in her room 5 out of 7 days a week because of fear.  She sleeps about 4 hours at a time.  She walks mostly to get places, occasionally taking public transportation if it is not crowded.  She has been kicked out of many shelters.  Her treatment has not helped and she is taking medications for anxiety and sleep.  The medication does not help much and makes her sleepy.  In addition, the claimant testified her back pain makes it difficult to climb stairs.  She can stand/walk up to 5 minutes and can lift/carry up to 2 pounds. Her vaginal bleeding makes her tired.  She alleged that [she] stopped using drugs 3 months ago, but she continues to have depression, anxiety, and hallucinations.  At the new hearing, she testified that she still sees a psychiatrist for depression.  She reports taking medication for her psychiatric impairments, as well as for hypertension, but notes that she only takes over the counter pain medication.  She reports that she is unable to get out of bed four days per week due to depression.  She also alleged worsening hallucinations.

AR 2555-56.

The ALJ identified five reasons for finding plaintiff's statements regarding her physical and mental health symptoms to be inconsistent with the record: (1) that she "remain[ed] capable of extensive activities of daily living, including moving from shelter to shelter"[;] (2) that "the results of her physician examination had been generally normal"[;] (3) that she "is able to take public transportation when it is not crowded"[;] (4) that "the medical evidence of record fails to establish

16

an extended period of sobriety upon which the undersigned or any mental health professional could rely to assess whether the claimant's substance abuse is a contributing factor material to the determination of her disability"[;] and (5) that "the record shows the claimant's mental condition appears to stabilize when she was on medications and off methamphetamine."  AR 2558.

### C.    Analysis

The structure of the ALJ's decision makes judicial review difficult.  "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"  *Brown-Hunter*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *see also Smolen*, 80 F.3d at 1284.  In *Brown-Hunter*, for instance, the Ninth Circuit found that an ALJ erred by making a conclusory statement for rejecting the claimant's testimony while "fail[ing] to identify specifically which of Brown-Hunter's statements she found not credible and why."  *Brown-Hunter*, 806 F.3d at 493.  Likewise here, over the course of several pages, the ALJ summarized plaintiff's hearing testimony and detailed her history of numerous physical and mental impairments.  *See* AR 2555-58.  The ALJ then stated, "For these reasons, the undersigned finds the claimant's allegations of debilitating body pain and limitations unpersuasive."  AR 2558.  Yet the ALJ did not identify which specific statements of plaintiff's were not credible and why.  The Court is left either to guess or else to conclude that the ALJ rejected <u>all</u> of plaintiff's symptom testimony.  It is against this backdrop that the Court analyzes the reasons the ALJ provided for finding plaintiff's testimony unpersuasive.

First, the ALJ rejected plaintiff's symptom testimony because he found she was "capable of extensive activities of daily living, including moving from shelter to shelter."  *Id.*  This is after the ALJ noted that plaintiff "has been kicked out of many shelters."  AR 2556.  At the first hearing, the ALJ asked whether plaintiff had "ever gotten kicked out of shelters or housing or programs because you had trouble getting along with people?"  AR 75.  Plaintiff responded, "Yes. . . .  A lot of them.

. . . I think all of them."[12]  *Id.*  At no time did the ALJ question her on how she physically moved from one shelter to the next.  The Ninth Circuit has stated that there are two grounds for using daily activities as the basis for an adverse credibility determination: contradiction with other testimony and transferability of work skills.  *Orn*, 495 F.3d at 639.  Here, if the ALJ believed this testimony contradicted plaintiff's statements about her ability to walk more than five minutes or carry more than two pounds, then it was incumbent on the ALJ to: (1) say so, and (2) develop the record further in this area.  The ALJ did neither.  Additionally, nothing about moving to a new shelter after having been kicked out of the last one "meets the threshold for transferable work skills."  *See id.*

Second, the ALJ rejected plaintiff's testimony because "[t]hroughout the applicable period, the results of her physical examination had been generally normal."  AR 2588.  This statement is so vague as to be essentially unreviewable.  The ALJ did not identify which record(s) contradicted which testimony.  And as plaintiff notes, the record is filled with treatment notes and other records documenting plaintiff's recurring back pain, vaginal bleeding, chronic blood in her urine, and other conditions that neither the ALJ nor her doctors allege were fabricated.  *See, e.g.*, AR 527-28 (July 2010 treatment notes diagnosing benign essential hypertension, hypopotassemia, anemia likely due to menorrhagia (vaginal bleeding)), 589 (February 2009 treatment notes listing chronic sciatica since August 2008 and acute hematuria (blood in urine) since December 2008), 835 (January 2016 treatment notes assigning "GAF" of 50).[13]  The ALJ failed to provide a specific, clear and convincing reason to reject plaintiff's testimony on this point.

Third, the ALJ rejected plaintiff's testimony because she "is able to take public transportation when it is not crowded."  AR 2558.  Again, the ALJ did not say how this contradicted plaintiff's testimony about her debilitating body pain or mental conditions.  In her October 2016 function report, plaintiff stated that she is "antisocial and [doesn't] like to be around other people – 80% of the time I want to be isolated and left alone."  AR 331.  She checked boxes stating that when

---

[12] At the time of the second hearing, plaintiff was living in an apartment and had a case manager through Benita House.  AR 2599-2600.  Her time living in the shelters was not discussed.

[13] The ALJ himself noted that plaintiff's Global Assessment of Functioning score of 40 or 50 "indicat[es] significant limitation in functioning."  *See* AR 2557.

she goes out, she rides in a car or uses public transportation.  AR 334.  At the first hearing, held July 24, 2018, plaintiff testified that she walks when she needs to get around, and that she "sometimes" takes public transit, but that the crowds make it difficult for her.  AR 68.  When asked what she does if it's crowded, plaintiff responded, "Let it go by. . . .  I'm always late."  *Id.*  By the time of the second hearing in October 2021, plaintiff testified that she last took public transit "around 2012, 2013, right before the Lyfts and the Ubers came out."  AR 2605.  Although the dates plaintiff gave seem incorrect,[14] the Court sees nothing in the public transportation testimony overall that contradicts her statements that she cannot be around other people most of the time.  And as already noted, the ALJ failed to identify which parts of plaintiff's statements her public transit use contradicted.  The Court will not engage in guesswork in reviewing the ALJ's decision.  *See Brown-Hunter*, 806 F.3d at 492 (the reviewing court is "constrained to review the reasons the ALJ asserts" and "cannot engage in such substitution or speculation") (citations omitted).

Fourth, as already discussed in Section I.C.2 above, the absence of a period of sobriety is not a clear and convincing reason to reject plaintiff's symptom testimony.  SSR 13-2p expressly states that a claimant may prove disability even without evidence of a period of sobriety.  SSR 13-2p, 78 Fed. Reg. at 11941.  Additionally, the ALJ's statement is wrong.  Defendant does not dispute plaintiff's testimony that she began using methamphetamine in 2014 when she became homeless, following an alleged disability onset date of January 15, 2008.  *See* Def.'s Cross-Mot. at 5; AR 2610.  Defendant concedes that the ALJ was incorrect in stating that the record contained no extended period of sobriety, though defendant argues the error was harmless.  Def.'s Cross-Mot. at 5.  To argue that the oversight of a 6-year long period of sobriety is "harmless" stretches credulity.  The record also contains other periods of sobriety.  For instance, at the first hearing, plaintiff testified that she had been sober for three months and one week but that her symptoms had worsened and she continued to have depression and anxiety and to hear voices and see shadows "[a]ll the time."  AR 81-83.  At the second hearing, plaintiff testified that she had been sober for two years but that

---

[14] For her January 2017 examination by Dr. Pingitore, for instance, plaintiff arrived early and "was observed exiting from an AC Transit bus."  AR 1763.

United States District Court
Northern District of California

her mental health symptoms had worsened during that time.  AR 2605-06.[15]

Finally, the ALJ's assertion that plaintiff's "mental condition appears to stabilize when she was on medications and off methamphetamine" is not supported by substantial evidence in the record.  *See* AR 2558.  Again, the ALJ failed to cite specific records or to identify exactly which of plaintiff's statements were unsupported.  Moreover, both of plaintiff's treating providers rejected the premise that plaintiff would not be disabled if she were off meth and on medication.  Dr. Jurkowski explained that it is "often the case with Schizoaffective disorder" that one's functional level will gradually decline.  AR 1735.  In diagnosing plaintiff with amphetamine dependence, he stated, "It is important to note that for many years prior to this she was declining and this drug use is not the primary source of her disability."  *Id.*  Dr. Bird explained that plaintiff "is currently on medication and in psychotherapy.  Unfortunately, response has been very poor, given the difficult nature of treating delusional disorders (false, fixed beliefs)."  AR 2503.  In opining that plaintiff would <u>not</u> be expected to significantly improve in the absence of substance use, Dr. Bird explained, "Patient's severe behavioral health conditions occurred prior to any substance use.  I do not expect her symptoms to significantly improve with abstinence, and there is a possibility that delusional parasitosis would improve with long-term absence of meth use."  AR 2506.

For the reasons stated above, the ALJ committed legal error in the rejection of plaintiff's symptom testimony.  Such error was not harmless.  *See Brown-Hunter,* 806 F.3d at 489.

## III.   Remedy

Having found that the ALJ committed reversible error, the Court proceeds to the question of remedy.[16]  Plaintiff argues that remanding solely for calculation and award of benefits is appropriate

---

[15] The record also contains treatment notes from plaintiff's periods of incarceration, and in her brief plaintiff argues that these also constituted periods of sobriety.  *See* Pl.'s Mot. at 22-23.  The ALJ interpreted a line in a January 2015 treatment note ("She endorsed methamphetamine use in the community.") as "apparently reporting that she was able to obtain methamphetamine while in jail and/or treatment."  AR 2558 (quoting AR 1228).  The Court shares plaintiff's skepticism that the phrase "in the community" should be construed as drug use while in jail.  At the very least, the ALJ should have developed the record further before construing this one line against plaintiff on her credibility finding.

[16] The Court does not separately address plaintiff's arguments regarding error in the DAA

20

in this case.  Pl.'s Mot. at 27-28.  Defendant disagrees, arguing that, if the Court reverses, the proper remedy is remand for further administrative proceedings.  Def.'s Cross-Mot. at 17.  Defendant does not state what purpose further proceedings would serve or what evidence is still needed to complete the record.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met.  First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison*, 759 F.3d at 1020).  Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful."  *Id.*  (citations and internal quotation marks omitted).  Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability."  *Id.* (citing *Treichler*, 775 F.3d at 1101).  Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion.  *Id.* (citing *Treichler*, 775 F.3d at 1101).  In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled.  *Trevizo*, 871 F.3d at 683 n.11.  In such instances, remand for further development of the record is warranted.  *Id.*

Here, the Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of plaintiff's treating practitioners—Drs. Jurkowski and Bird—and in discrediting plaintiff's symptom testimony.  The Court further finds that there are no outstanding issues to resolve.  The record in this case totals more than 2800 pages and contains treatment records

---

analysis, as the Court addressed those arguments in the discussions regarding the medical opinion evidence and plaintiff's symptom testimony.  Plaintiff's arguments regarding the RFC evaluation and the VE testimony will be addressed in the Remedy section, below.

from multiple providers spanning more than a decade, as well as plaintiff's testimony from two administrative hearings. Plaintiff's treating practitioners met with her frequently and established relationships with her. As noted above, defendant has not identified any specific record or testimony needed to complete the record. The Court finds the record does not need further development and that further administrative proceedings would not be useful.

Crediting the discredited testimony as true, there is no doubt as to plaintiff's disability. Numerous treating and examining providers over the years have diagnosed plaintiff with PTSD, major depressive disorder, and/or schizoaffective disorder, in addition to methamphetamine dependence. *See, e.g.*, AR 1223-25, 1740, 1765, 2503. Treating providers Dr. Jurkowski and Dr. Bird each authored medical source statements explaining that plaintiff's severe behavioral health conditions predated her drug use and opining that plaintiff's mental impairments would still be disabling if she were not using drugs or alcohol. AR 1745, 2506.

At step three of the five-step inquiry, the ALJ found that, including the substance use, plaintiff met the criteria for Listings 12.03, 12.04, 12.06, and 12.15. AR 2553 & n.1. The ALJ found, however, that plaintiff would not meet the criteria for the Listings if she stopped the substance use. AR 2553. Crediting as true the opinions of Dr. Jurkowski and Dr. Bird that plaintiff's DAA was not material, plaintiff would have been found disabled at step three.

Even proceeding with the remainder of the five-step disability inquiry, plaintiff would be found disabled under the credit-as-true rule. The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true. *See, e.g.*, *Garrison*, 759 F.3d at 1022; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Here, the VE testified that a claimant who would be absent two days per month or who would be off-task more than 10% of the time would not be able to sustain competitive employment. AR 2619. On the mental impairment questionnaires, Dr. Jurkowski and Dr. Bird checked boxes stating that plaintiff would be absent 4-5 days or more per month and that she would be off-task more than 30% of the time. AR 1745, 2506-07. Plaintiff repeatedly reported that she was too depressed to leave her room about

United States District Court
Northern District of California

1  four days per week.  AR 339 (October 2016 function report), 2603-04 (October 2021 hearing).  On

2  June 29, 2018, Dr. Bird explained that plaintiff's childhood trauma had created "severe PTSD

3  symptoms" and that plaintiff had frequent nightmares and flashbacks.  AR 2506.  Dr. Bird did not

4  expect plaintiff's symptoms to significantly improve in the absence of substance use, *id.*, and

5  plaintiff herself testified at both hearings that her symptoms had worsened when she was sober.  AR

6  81-83, 2605-06.

7       Plaintiff also testified that she has heard voices and seen shadows "all my life," and that even

8  during sobriety she heard voices and saw shadows "all the time."  AR 82.  She explained that with

9  medication she "hear[s] them less, but they're still there."  AR 2611-12.  She also explained that

10 when she was working up until 2008 she saw shadows and heard voices, but that around 2007 it

11 "got worse, and I couldn't fake it to make it no more."  AR 2612.  This is consistent with Dr.

12 Jurkowski's observation that plaintiff's schizoaffective disorder predated her drug use, that it

13 worsened over time ("as is expected with schizoaffective disorder"), that plaintiff "has had a gradual

14 decline in functioning," and that her symptoms would still be disabling if she were not using drugs.

15 AR 1735, 1745.  Dr. Jurkowski stated that "her disability is total, chronic, and severe, and her

16 prognosis is very poor."  AR 1735.  Neither the ALJ nor defendant have suggested that plaintiff was

17 malingering, and none of the reasons the ALJ gave for discrediting plaintiff's testimony contradict

18 her statements that she sees shadows and hears voices all the time, or that she is too depressed to

19 leave her room multiple days per week.

20      For all of the above reasons, the Court sees no basis for serious doubt in the record that

21 plaintiff is disabled.  Moreover, remand for benefits is appropriate here where plaintiff first applied

22 for benefits over six years ago, and this case has already once gone back to the agency for further

23 proceedings.  *See Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001); *Benecke v. Barnhart*,

24 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would

25 create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")

26 (citation omitted).  The Court will remand for immediate payment of benefits.[17]

27

28      [17] The agency already found plaintiff eligible for Title XVI disability benefits based on an
   application filed April 15, 2020.  AR 2629.  The Appeals Council's remand instructions to the ALJ

1

## CONCLUSION

2          For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and

3     DENIES defendant's cross-motion for summary judgment.   The Court REMANDS this case

4     pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

5

6          **IT IS SO ORDERED**.

7     Dated: January 6, 2023

8                                                          _____

9                                                          SUSAN ILLSTON
                                                           United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27     stated that the ALJ's decision should be "limited to that period prior to April 15, 2020," yet the
       ALJ's decision was for a finding of "not disabled" through the date of decision, November 15, 2021.
28     *Id.*; AR 2562.  The Court trusts that the Social Security Administration will be able to correct any
       remaining inconsistencies to avoid duplicative payment of benefits following remand.

United States District Court
Northern District of California

24